WILLIAM A. RYAN, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 25539.)

Court of Claims, July 19, 1943.

*Charles J. Duncan* for claimant.

*John J. Bennett, Jr.,* former *Attorney-General (Alfred F. Spagnolo* of counsel), and *Nathaniel L. Goldstein,* present *Attorney-General (Arthur W. Mattson* and *Donald C. Glenn* of counsel), for defendant.

FITZSIMMONS, J. Claimant, while driving his car northerly along the State highway between Antwerp and Gouverneur about dusk on March 8, 1939, met with painful injuries which,

he alleges, were caused by the negligent construction and maintenance of said highway.

The State's defense rests upon the two propositions that (a) claimant was " driving his car in a negligent manner " at such time, and (b) that " Section 58 of the Highway Law expressly exempts the State from liability for damages suffered by any person by defects in a State highway except between the first day of May and the fifteenth day of November * * *."

The accident was caused by claimant's car having come in contact with two humps or ridges considerably elevated above the level of the pavement, on his right-hand side of the highway. The first of such humps was eight to nine inches in height, while the second one was seven inches high. The second of such humps was distant from twenty-five to thirty feet northerly of the first one. Both of such humps, as well as a third one, six inches in height, fifteen to twenty feet northerly of the second one, rose to peaks from three-foot bases.

Claimant, despite his having been driving at a safe speed, and having immediately applied his brakes after striking the rut formed by the first hump, had his car forced against the second of such humps.

The circumstances attendant upon the accident were as follows: The highway was a two-stripped one; at such time it was practically free of snow, ice and traffic; traveling about forty miles an hour, claimant had a straightaway for a considerable distance ahead; the time being approximately 5:00 P. M.— twilight — his dim or low lamps were lighted; and, as he drove along, " there was no signal or anything of what was there, and I didn't see it until I got right up on it, and as I tried to pull out, swerve my car out of this rut, the car hit the second rut, turned over and over, and I rolled over five times (turned turtle), to the left of the road."

Supporting such testimony, claimant offered two photographs taken three days after the accident — at a time when conditions were identical with those which had then existed. A close examination of such exhibits (Claimant's 3-a and 3-b) will indicate an appearance of an absolutely clear, danger-free road ahead, without its appearing that at such place, or in its vicinity, were flags, warning signals or device of any kind whatsoever to put a driver on notice of the danger ahead.

Claimant was so helplessly pinned inside his car as to require the services of two State troopers to free him, and so painfully injured as to necessitate his being sent immediately to the Gouverneur Hospital.

By brief submitted herein, the State "concedes that the condition, caused by the elements, existed."

Such humps or ridges, with their accompanying ruts, were annually formed, each Spring, through the thawing of ice caused by the seepage of surplus waters which had collected in pockets beneath the surface of the pavement.

Neither at the point of accident nor in its vicinity were drainage facilities furnished.

The existence of such humps — as well as the cause of them — was known to four highway officers and employees charged with maintenance of the particular strip of road in question for from four to five years. A long-time neighborhood resident observed the humps over a period of five to six years.

The record is silent as to effort of any kind, at any time, having been made to eradicate the cause of the formation of such humps.

That a known dangerous driving condition existed at the point of accident may fairly be inferred from the fact that year-round patrolling of such highway was necessitated.

Claimant's testimony as to lack of warning signs at the point of accident is explicit, clear and convincing; the testimony offered by the State on the subject matter is uncertain and hazy.

No inference of excessive driving speed may be drawn from the fact of claimant's car having turned over as it did — since hitting of the "ruts" or "humps" more than readily accounts for it.

By reason of the foregoing we reach the conclusion that claimant was not given proper and timely warning of a long-known dangerous condition at the point of accident.

We further find, that claimant was free of any contributory negligence herein.

The State is herein beyond the pale of exemption from liability for damages resulting from highway defects beyond the patrol period, the underlying reasons for which, as assigned by the State, are that it is impossible to prevent or repair highway defects "which come and go with the winter season." With such reasoning there can be no question.

Section 58 of the Highway Law, providing for such exemption, and section 8 of the Court of Claims Act (L. 1939, ch. 860), providing a general waiver of immunity from liability by the State, must be read together, and a determination reached as to whether claimed damage resulted from a mere "defect," or from misfeasance or negligence by State's officers and employees, in which latter instance the State is liable "*whether such dam-*

*ages were sustained on a highway or otherwise or at any time of the year."* (*Miller* v. *State,* 231 App. Div. 363, 368. Italics supplied. To same effect, *Karl* v. *State,* 279 N. Y. 555, 558, 559.)

This court has made numerous awards where " damages were sustained on a highway * * * at any time of the year."

The latest word on the subject is set forth in *Torrey* v. *State* (266 App. Div. 900), which held that a dangerous accumulation of water causing a highway defect *could reasonably have been anticipated.*

In the instant case the " defects " appeared annually with as unfailing regularity as harbingers of Spring; far from being merely " reasonably anticipated " — their failure to arrive might have caused one to ponder a most unusual climatic vagary, yet, as the nests of the robins, they were left undisturbed.

For damages sustained by claimant, for three months' physical incapacity, hospital expenses incurred and damage to his automobile, an award is made by separate decision herein.